*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 20, 2023

Plaintiff-Appellee,

v

No. 360673
Emmet Circuit Court
LC No. 20-005119-FH

KIP ALAN MILLER,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Defendant, Kip Miller, appeals by right his jury-trial convictions of four counts of second-degree child abuse, MCL 750.136b(3); two counts of third-degree fleeing and eluding a police officer, MCL 257.602a(3); and two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). The trial court sentenced Miller as a second-offense habitual offender, MCL 769.10, to serve 50 months' to 15 years' imprisonment for the second-degree child abuse convictions; 20 to 90 months' imprisonment for the third-degree fleeing and eluding convictions; and 13 to 36 months' imprisonment for the assaulting, resisting, or obstructing a police officer convictions. We affirm.

## I. BASIC FACTS

On August 27, 2020, Miller was homeless and living out of his pickup truck with his four minor children. Miller had been low on gas for some time and, in the early morning, he attempted to get gas at a Meijer gas station, but was unable to do so. Frustrated, he sped from the parking lot at a high rate of speed. Miller sped up on another motorist, revving his engine and causing the other motorist to swerve to avoid being struck. The motorist, who was "pretty pissed" at Miller, chased after Miller, but after noticing a child in the frost seat with Miller, he decided to "let it go" and called 9-1-1. While on the phone with the dispatcher, the other motorist continued to follow Miller, who again revved his engine and swerved at the other motorist.

Eventually, Miller drove to another gas station, filled his tank, and purchased snacks and hot coffee. A police officer responded to the gas station. He pulled his marked police car directly behind Miller's truck and approached the driver's side window. He could see a child in the front

-1-

seat, but because of the dark tint on the rear windows, he did not see Miller's three other children. The officer attempted to discuss the driving complaint with Miller, but Miller became increasingly agitated and told the officer to either arrest him or leave. As the conversation escalated, Miller put his keys into the ignition, at which point the officer told him twice that he was not free to leave. Miller did not stop what he was doing, so the officer reached into the truck to remove the keys and prevent Miller from leaving. As he did so, Miller's hot coffee struck the officer on his face, neck, and chest, causing him to recoil from the truck.

Miller took the opportunity to flee from the gas station just as another officer in a marked police car was arriving. He yelled for his children to "buckle up," but did not secure his own safety belt or give the children adequate time to put their seatbelts on before he left the parking lot. Both officers pursued Miller's truck with their patrol vehicles lights and sirens turned on. Miller, who was aware of the police pursuit, did not stop or pull over. The officers followed him for approximately eight miles. During that time, Miller continued to speed. At that point, the officers stopped chasing Miller for safety reasons.

Two Michigan State Police Troopers learned of the pursuit over the police radio, and they began following Miller when he drove past them. The troopers coordinated the placement of spike strips ahead of Miller, and Miller stopped in the middle of the highway upon seeing them. The troopers pinned Miller's truck between two marked police vehicles and approached his truck. Miller refused to cooperate with the troopers, so they attempted to forcibly remove him from the truck by breaking his rear window. The troopers quickly realized that there were three small children in the backseat. The children had glass from the broken window all over them, were extremely afraid, and were screaming. Miller used his truck to force a police vehicle out of his path, and he drove over the spike strips as he fled. Because his tires had been damaged by the spike strips, Miller pulled into a nearby church parking lot. The troopers surrounded his truck, but Miller still refused to communicate with the troopers or exit his vehicle. The troopers called in reinforcement, including an Emergency Support team. Miller and his children remained in the truck for approximately eight hours. During that time, the children—who were accustomed to living in the truck—urinated in water bottles or a portable toilet. Further, although Miller and the children were offered food and water by a support negotiator, Miller refused. Eventually, in response to a communication from Miller, the children's mother arrived at the church parking lot. The troopers ultimately had to forcibly remove Miller from the vehicle. During a subsequent search of the vehicle, the troopers discovered multiple firearms in the front end of the bed of the truck.

The children were turned over to their mother, who described them as thin and dirty, with stringy hair and a lot of sores on their feet from wearing sandals for a prolonged time. They also had tiny scratches from when the glass was broken.

Following a jury trial, Miller was found guilty of four counts of second-degree child abuse, two counts of fleeing and eluding, and two counts of assaulting, resisting or obstructing a police officer. The jury did not find Miller guilty of assaulting, resisting or obstructing a police officer causing injury, nor did it find him guilty of the any of the felony-firearm changes.

## II. INEFFECTIVE ASSISTANCE

## A. STANDARD OF REVIEW

Miller argues that he was denied his right to a unanimous verdict on all charges because the trial court failed to give a specific unanimity instruction to the jury. In the alternative, he contends that his defense lawyer provided him with ineffective assistance by failing to request a specific unanimity instruction. We conclude that by expressly and explicitly approving the jury instructions, Miller has waived his challenge to the jury instruction. See *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020) ("A party's explicit and express approval of jury instructions as given waives any error and precludes appellate review."). Therefore, our review is limited to Miller's argument that his lawyer was ineffective for failing to request a specific unanimity instruction. Because no evidentiary hearing was held in the trial court, our review is limited to errors apparent from the record. *People v Acumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

## B. ANALYSIS

In order to show that a defense lawyer provided ineffective assistance, the defendant bears the burden of showing that the lawyer's performance (1) "fell below and objective standard of reasonableness," and (2) that, but for his lawyer's defective performance, there is a "reasonable probability" that the "result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted).

Miller asserts that his lawyer was ineffective for failing to request a specific unanimity instruction because there were several separate and distinct acts, each of which were sufficient to satisfy the elements of second-degree child abuse. See MCL 750.136b(3)(b). A jury verdict in a criminal case must be unanimous. *Ramos v Louisiana*, ___ US ___; 140 S Ct 1390, 1397; 206 L Ed 2d 583 (2020). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *People v Cooks*, 446 Mich 503, 511; 521 NW2d 275 (1994). A general unanimity instruction is ordinarily sufficient to protect a defendant's right to a unanimous verdict. *Id*. at 512-513, 524. A specific unanimity instruction is necessary only "if alternative acts allegedly committed by defendant are presented by the state as evidence of the *actus reus* element of the charged offense," and "1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt." *Id*. at 524.

Miller argues that the jurors could have believed that he committed second-degree child abuse when he (1) sped away from the second gas station, (2) sped down the highway while being pursued by the police, (3) used his truck to push a police vehicle out of his way, or (4) locked himself in his truck with his children for several hours while surrounded by the police. However, the acts referenced by Miller are not materially distinct. Each act constituted part of the same criminal transaction. The police began pursuing Miller when he fled from officers at the second gas station with his four children inside of his truck and the incident did not end until approximately eight hours later when the police forcibly removed Miller from his truck.

-3-

Throughout the entire pursuit, Miller never shut off his truck, unlocked the doors, rolled down the windows, or exited the vehicle. Miller testified that he knew that he was going to be arrested after he fled from the gas station but that his "plan was not to stop" for the police until he could drop off his children with their mother. While the acts listed by Miller resulted in multiple other convictions, they were a "continuous course of conduct" that did not require a specific unanimity instruction. See *id*. at 528.

Moreover, Miller did not offer a separate defense to each act. Rather, he testified he should not have acted in the way that he did but that he only did so because he was afraid of being harmed and that his children would be placed in foster care. Therefore, the jury's sole duty "was to determine the credibility" of Miller "with respect to the pattern of alleged conduct." See *id*. There is no reason to believe that the jury was confused or disagreed about the factual basis of Miller's guilt. See *id*. at 530. Accordingly, a specific unanimity instruction was not necessary, and Miller's lawyer was not ineffective for failing to make a meritless objection or argument. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### III. SENTENCING

### A. STANDARD OF REVIEW

Miller argues that he is entitled to resentencing on his child-abused convictions because the trial court made sentencing guidelines scoring errors with regards to OVs 2 and 13. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).[1]

### B. ANALYSIS

### 1. OV 2

OV 2 addresses the "lethal potential of the weapon possessed or used." MCL 777.32(1). A score of five points is required if "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." In this case, the police removed multiple guns from Miller's truck. However, the jury acquitted Miller of the firearms-related offenses. "[R]eliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment," and the trial court's

---

[1] At sentencing, Miller's lawyer stated that he had "no challenges to the scoring" of the sentencing guidelines. However, he has preserved his challenge by filing a motion to remand for resentencing in this Court. See MCL 769.34(10). Moreover, Miller did not waive review of his challenge by stating that he had no objection to the scoring of OVs 2 and 13. Rather, as recognized by this Court in *People v Hershey*, 303 Mich App 330, 354; 844 NW2d 127 (2013), the whole record must be considered when determining whether an expression of satisfaction with the scoring is or is not a waiver. Thus, in cases where the sentencing variables are not mentioned during sentencing, a defendant does not waive a scoring challenge by merely failing to object to the scoring. *Id*. Here, given that there was no discussion of the scoring of any of the OVs, Miller's lawyer's statement that he had no challenge to the scoring resulted in a forfeiture, not a waiver.

consideration of acquitted conduct when sentencing a defendant violates his or her due-process rights. *People v Beck*, 504 Mich 605, 609, 629; 939 NW2d 213 (2019). As a result—and as conceded by the prosecution on appeal—the court's reliance on acquitted conduct in scoring OV 2 was improper.

## 2. OV 13

OV 13 addresses an offender's "continuing pattern of criminal behavior." MCL 777.43(1). The sentencing court must assess 25 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c). To determine the appropriate points under OV 13, the sentencing court must consider "all crimes within a 5-year period, including the sentencing offense . . . , regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). "[A] single felonious act cannot constitute" a continuing pattern of criminal behavior because the "word 'continuing' clearly refers to an event or process that takes place over time." *People v Carll*, 322 Mich App 690, 704-705; 915 NW2d 387 (2018). The Legislature's use of such statutory language "evinces an intention that it is repeated felonious conduct that should be considered in scoring this offense variable." *Id*. at 706 n 7 (quotation marks and citation omitted). However, the sentencing court may consider "multiple convictions arising from the same incident" when the defendant committed multiple "separate acts" throughout the course of "a single criminal episode." *People v Gibbs*, 299 Mich App 473, 487-488; 830 NW2d 821 (2013).

Miller argues that, under *Carll*, the four child-abuse convictions cannot constitute a continuing pattern of criminal behavior. We agree. However, one of the child-abuse convictions can be counted for purposes of OV 13 because it is a crime against a person. Further, Miller was convicted of two counts of resisting or obstructing a police officer that were based on multiple separate acts. One count was for leaving the second gas station after a police officer told him that he was not free to leave, and the other when he struck that officer with hot coffee when the officer reached into the truck to prevent Miller from starting the vehicle and leaving. Assaulting, resisting, or obstructing a police officer is a crime against a person. See MCL 777.16d. Thus, both of those convictions must be counted under OV 13. This means that, when scoring the guidelines for the child-abuse convictions, the trial court's decision to score OV 13 at 25 points is not clearly erroneous because there is, in fact, a pattern of felonious criminal activity involving three crimes against a person: child abuse and two counts of resisting or obstructing a police officer.

## 3. CONCLUSION

Although OV 2 was improperly scored at five points, a five-point reduction in the OV score would not affect Miller's sentencing guidelines range. As a result, remand for resentencing is not required.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford